

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTHOFF VERTRIEBSGES MBH,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER BERG; BLUESKYE CREATIVE, INC.,<br><br>Defendants. | Case No. 22-cv-0938-BAS-SBC<br><br>**ORDER DENYING WITH LEAVE TO AMEND PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br>**(ECF No. 77)** |

Presently before the Court is Plaintiff's motion for attorney's fees and costs. (ECF No. 77.) Plaintiff's motion presents four requests: (1) attorney's fees incurred in defending against Defendants' copyright counterclaims, (2) attorney's fees incurred in opposing Defendants' anti-SLAPP motion to strike, (3) a finding that the law firm, Gordon Rees Scully Mansukhani, LLP ("GRSM"), is jointly and severally liable for any fees awarded, and (4) costs. (*Id.*)

The motion has been fully briefed. (ECF Nos. 77, 99, 100, 102.) The Court finds Plaintiff's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES with leave to amend** Plaintiff's motion.

- 1 -

22cv0938

## I.    BACKGROUND

In May 2020, Plaintiff Westhoff filed a first amended complaint in the Southern District of California against Defendants Berg and BlueSkye, Case No. 20-cv-00928-WQH-MDD, asserting state law claims based on diversity jurisdiction before the Honorable William Q. Hayes. (Lowry Decl. ¶ 4, ECF No. 77-2.) In response, Defendants moved to dismiss, arguing in part that the amount in controversy did not meet the $75,000.00 jurisdictional threshold. (Lowry Decl. ¶ 5; Heffner Decl. ¶ 4, ECF No. 99-1.) Defendants also filed notice of Rule 11 sanctions against Plaintiff, pertaining to the first amended complaint. (Heffner Decl. ¶ 5.) Within the safe harbor period, Plaintiff voluntarily dismissed the action without prejudice and refiled in the San Diego Superior Court the following month. (Heffner Decl. ¶ 6.) The case remained in state court for nearly two years. (Heffner Decl. ¶ 7.)

The Court chronologically lists key dates from the state court proceedings. On May 12, 2021, Defendants filed a demurrer. (Heffner Decl. ¶ 8.) In a case management conference, on June 11, 2021, the state court judge set the matter for trial in 2022. (Lowry Decl. ¶ 11.) On August 3, 2021, Plaintiff filed a first amended complaint. (Heffner Decl. ¶ 9.) In August 2021, Defendants put Plaintiff on notice of their intent to file copyright counterclaims. (Lowry Decl. ¶ 12.) The following month, in September 2021, BlueSkye registered the copyrights at issue with the United States Copyright Office. (*See, e.g.*, ECF No. 13-1.)

Also, on September 3, 2021, Defendants filed a demurrer to Plaintiff's first amended complaint. (Heffner Decl. ¶ 10.) The state court judge sustained in part Defendants' second demurrer with leave to amend some causes of action. (*Id.*) On April 8, 2022, Plaintiff filed a second amended complaint. (Heffner Decl. ¶ 11.) In response to Plaintiff's second amended complaint, on May 11, 2022, Defendants filed an answer and a cross-complaint that included the copyright infringement claims. (Heffner Decl. ¶ 12.)

22cv0938

**A.      Copyright Counterclaims**

In May of 2022, Defendants filed copyright counterclaims in the state court action, which provided the basis for removal to this Court. (Lowry Decl. ¶ 6.)[1] The copyright counterclaim reflected irregularities in the copyright certificates; Defendants then filed an amended copyright counterclaim, which asserted three claims: (1) copyright infringement; (2) vicarious and/or contributory copyright infringement; and (3) violation of California's Unfair Competition Law. (ECF No. 13.)

In response, Plaintiff filed a counter-counterclaim asserting eight claims. (ECF No. 21.) Count One alleged its own copyright infringement claim. (*Id*.) Counts Two through Eight each sought declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, on the theory that Defendant Berg could not enforce his copyright claims because of inequitable conduct and unclean hands—specifically, that Defendant Berg had allegedly forged the copyright registration certificates originally filed in the state court proceeding prior to removal. (*Id*.)

Defendants disputed the forgery allegation, arguing that the issues with the copyright registration certificates were the product of a technical error—specifically, that the PDF files were somehow corrupted during processing. (anti-SLAPP Heffner Decl. ¶¶ 3–8, 10, 14; ECF No. 31-2.) Defendants contend that the amended counterclaim cured the deficiencies in the copyright registration certificates that Plaintiff identified. (*Id*. at ¶¶ 11–13; *see* ECF No. 13.)

In response to Plaintiff's counter-counterclaim, Defendants moved to dismiss. (ECF No. 22.) Plaintiff, in turn, filed a motion for judgment on the pleadings, which the Court later construed as a motion to dismiss. (ECF Nos. 29, 58.)

---

[1] Technically, only Defendant BlueSkye filed the copyright counterclaims, but the Court refers to Defendants for readability and consistency. (Heffner Decl. ¶ 13, ECF No. 99-1.) And the Court's Findings of Fact and Conclusions of Law determines that BlueSkye and Mr. Berg are alter egos. The only claim asserted on behalf of Mr. Berg, in the counterclaim, was the Unfair Competition Law § 17200 violation based on Plaintiff's allegedly defamatory statements about Mr. Berg.

22cv0938

### B.    Anti-SLAPP Motion to Strike

Defendants moved to strike Counts Two through Eight of Plaintiff's counter-counterclaim pursuant to California's anti-SLAPP statute. (ECF No. 31.) Plaintiff opposed on the ground that the anti-SLAPP statute does not apply to federal causes of action. (ECF No. 34.) Defendants replied that their motion targeted Plaintiff's equitable defenses to copyright infringement—unclean hands and inequitable conduct—which made the anti-SLAPP statute applicable. (ECF No. 35.)

### C.    Court's Order and the Motion for Attorney's Fees

On September 6, 2023, the Court issued an order addressing Defendants' copyright counterclaims, Plaintiff's counter-counterclaim, and Defendants' anti-SLAPP motion to strike. (ECF No. 58.) As relevant here, the Court dismissed Defendants' copyright counterclaims with prejudice, finding that Plaintiff held an unlimited, irrevocable implied license to use the photographs at issue. (*Id.*) The Court separately denied Defendants' anti-SLAPP motion to strike. (*Id.*)

On November 22, 2023, Plaintiff filed the pending motion for attorney's fees and costs. (ECF No. 77.) The motion presents four requests: (1) attorney's fees incurred in defending against Defendants' copyright counterclaims under 17 U.S.C. § 505; (2) attorney's fees incurred in opposing Defendants' anti-SLAPP motion to strike under California Code of Civil Procedure § 425.16(c)(1); (3) a finding that the firm GRSM is jointly and severally liable for any fees awarded pursuant to 28 U.S.C. § 1927; and (4) costs. (*Id.*)

### D.    Bankruptcy and Counsel at GRSM Withdraw

In December 2023, GRSM moved to withdraw as counsel for Defendants. (ECF No. 80.) Plaintiff opposed the withdrawal. (ECF No. 82.) The Court granted the motion to withdraw. (ECF No. 84.)

Also in December 2023, both Defendants Berg and BlueSkye filed voluntary bankruptcy proceedings. (ECF No. 83.) The filings triggered an automatic stay of this

- 4 -

22cv0938

proceeding pursuant to 11 U.S.C. § 362. (ECF No. 84.) In February 2024, the Court entered an order staying this action pending resolution of the bankruptcy proceedings. (*Id.*)

On November 4, 2024, the Bankruptcy Court granted Plaintiff relief from the automatic stay, permitting this Court to adjudicate Plaintiff's claims for accounting, intentional misrepresentation, and breach of fiduciary duty, as well as the pending motion for attorney's fees and costs. (ECF No. 89.)

### III.    ANALYSIS

#### A.    Attorney's Fees, Copyright, 17 U.S.C. § 505

Plaintiff seeks an award of attorney's fees in the amount of $181,406.22 for defending against Defendants' copyright counterclaims. (Fee Mot. 14:8–15, ECF No. 77.) The Court denies Plaintiff's request for the following reasons.

Courts "may" award the prevailing party in a copyright-infringement action a discretionary award of costs, including "reasonable attorney's fees." 17 U.S.C. § 505; *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994) (emphasizing that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion" given that the "word 'may' clearly connotes discretion" and "Congress legislates against the strong background of the American Rule"). The standard applies to prevailing plaintiffs and defendants. *See Fogerty*, 510 U.S. at 534 (1994) ("Prevailing plaintiffs and prevailing defendants are to be treated alike[.]").

The Supreme Court identified the following non-exclusive list of factors to guide the award or denial of attorney's fees for copyright claims: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19 (citation omitted). The Ninth Circuit additionally considers: "the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).

"There is no precise rule or formula for making these [fee] determinations" under § 505, "but instead equitable discretion should be exercised." *Fogerty*, 510 U.S. at 534 (citation omitted). In other words, "[d]istrict courts do not necessarily need to analyze all of the factors set out in the cases, as those factors are [] non-exclusive." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1042–43 (9th Cir. 2018).

### 1. *Fogerty* Factors

#### a. Objective Reasonableness and/or Frivolousness

A district court should accord "substantial weight to" the objective reasonableness of the losing party's legal and factual arguments. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016) (clarifying that "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.")).

A party's litigating position can be considered unreasonable when its "chances of success in [the] case were slim to none." *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013); *see also Kirtsaeng*, 579 U.S. at 205 ("The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance[.]"). "[T]he mere fact that [a party] lost cannot establish his objective unreasonability." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).

Here, Defendants' copyright counterclaims were objectively reasonable, although weak. *Cf. Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (finding the claim objectively unreasonable and awarding the defendant attorney's fees where the plaintiff's copyright claims were "completely contradicted by the language of the [] contract); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010) (finding the claim objectively unreasonable and awarding the defendant attorney's fees where the plaintiff "did not hold the copyrights at issue, but was merely a beneficial owner").

22cv0938

The merits of Defendants' counterclaim were analyzed under the *Effects* test, which lays out a three-factor analysis to determine if an implied license exists: (1) the licensee requests the creation of the work, (2) the licensor makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990); *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008).

Regarding the first prong of the *Effects* test, Plaintiff did not explicitly request, in the contract, the photographs. *Cf. Effects*, 908 F.2d at 556 ("Cohen asked Effects Associates, a small special effects company, to create footage to enhance certain action sequences in the film."). Nevertheless, the Court threaded together various factors to find that Plaintiff essentially requested the photographs: "The Contract, the parties' conduct, and common sense all illustrate that Westhoff 'requested' the Works for the purpose of the *Effects* test." (Sept. Order, 18:9–10, ECF No. 58.) Turning to the second prong, Defendants argued that they did not knowingly transfer the copyright in the photographs to Plaintiff either by transferring the website domain or by sending catalogs. *See Effects*, 908 F.2d at 556 (noting that "the Copyright Act invalidates a purported transfer of ownership unless it is in writing"). Defendants also argued that Plaintiff removed Defendants' copyright mark next to the photographs. Yet, the Court ultimately determined that Defendants delivered the Photographs given that one of Defendants' obligations was to create a website and there were no allegations to infer otherwise regarding the catalogs. (*Id*. at 21:3–6.)

The parties also debated the scope of the implied license, and whether it was appropriate for Plaintiff to make the marketing materials containing the photographs available for download to its flower purchasers. The Court determined such access was appropriate according to the terms of the contract. (Sept. Order, 26:11–17.)

Regarding the irrevocable nature of the unlimited implied license, the question turned on whether consideration had been given for the license. *See Gagnon*, 542 F.3d at 757; *see also Reinicke v. Creative Empire LLC*, 38 F. Supp. 3d 1192, 1203 (S.D. Cal. 2014), aff'd, 669 F. App'x 470 (9th Cir. 2016). Defendants argued that the amount compensated

covered the labor to take the photographs but did not cover the license to the photographs; yet, the Court noted that the "tactic Defendants seek to employ has been tried and rejected before." (Sept. Order, 25:16.) The Court mentioned that, "[s]everal times, the Ninth Circuit has quashed post hoc attempts by creators who claim the compensation they received covered their labor but not the actual works produced," citing to cases dealing with software licensing and the payment of $56,000.00 for movie footage. (*Id*. at 25:16–18.)

In the attorney's fees briefing, Defendants also note that in fall of 2022, Plaintiff asked Defendant BlueSkye to assign its registered copyrights to the Plaintiff—a request inconsistent with a clear irrevocable implied license. (Heffner Decl. ¶ 28.) Hence, although Defendants ultimately lost on the merits, their claim lacks the markings of objective unreasonableness.

A claim is frivolous when its factual allegations are "'clearly baseless,' such as factual claims that are 'fantastic or delusional scenarios.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-cv-00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005) (citation omitted). "A claim is not frivolous merely because it is unsuccessful." *Bisson-Dath v. Sony Computer Entm't Am. Inc.*, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012).[2] Here, Defendants' copyright counterclaims were not frivolous, for the same reasons that the Court found that Defendants' claims were not objectively unreasonable.

Thus, the Court finds these factors weigh against granting attorney's fees.

### b.  Motivation

"A finding of bad faith can be based on actions that led to the lawsuit, as well as on the conduct of the litigation." *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2016 WL 1258690, at *6 (N.D. Cal. Mar. 31, 2016) (citation omitted). Where a case involves difficult questions of law, or "substantial questions of first impression," it weighs

---

[2] Plaintiff states that the Ninth Circuit has affirmed dismissal of "federal claims as frivolous" when a "[party] pleaded himself out of court," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 984, 989 (9th Cir. 2001), but the Court fails to see such causal connection in the cited case.

22cv0938

against a finding that arguments were made in bad faith. *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1435 (9th Cir. 1986).

Here, the Court questions Defendants' motivation in bringing copyright counterclaims so many years into the litigation. As explained above, this action began in federal court. Regardless of the reason, Plaintiff voluntarily dismissed the federal action and refiled in state court. Several years later, after the state court set a trial date, Defendants asserted copyright counterclaims, which removed the action back to federal court.

Plaintiff does not allege or show that Defendants knew about the copyright violations beforehand, and Defendants' brief does not elucidate when Mr. Berg knew of Plaintiff's alleged copyright infringement. (BlueSkye/Berg Opp'n 4:19–20, ECF No. 100.) Of note, GRSM attaches an email in which Plaintiff e-mailed Defendant Berg in 2018, asking: "what would it cost when you design the new catalog for us?" (Heffner Decl. ¶ 27, Ex. A.) Defendant Berg responded, quoting $5,000.00. (*Id.*, at p. 1.) But this email does not put Mr. Berg on notice that Plaintiff intended to use the photographs. Even if Defendants knew about Plaintiff's use of the photographs, Plaintiff has not shown bad faith.

Plaintiff does not cite case law that moving from federal court to state court then back up to federal court, without more, constitutes bad faith—and the Court does not make the inference based on such circumstantial evidence. *See ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 958 F. Supp. 2d 215, 221 (D.D.C. 2013) ("On the record here, the Court would have to speculate to reach the conclusion that the plaintiff had an inappropriate motivation in bringing this litigation or acted in bad faith in conducting it. That the Court cannot do.").

In making its conclusion, the Court also takes into consideration the pace of court proceedings and highlights that some delay can be attributed to the fact that Plaintiff twice amended its complaint in state court, changing theories after each amendment. (Heffner Decl. ¶¶ 7–11.) Also, Defendants shared their intent to file copyright counterclaims in advance. (Lowry Decl. ¶ 12.) Further, the Court notes that the copyright counterclaims were neither frivolous nor objectively unreasonable. Hence, the Court considers this factor to weigh neither against nor in favor of attorney's fees.

22cv0938

### c.   Compensation and Deterrence

Courts must be "faithful to the purposes of the Copyright Act" in awarding attorney's fees under § 505, and requests for compensation are considered in light of the strong tradition that each party generally bears its own attorney's fees. *Fogerty*, 510 U.S. at 533–34.

Regarding deterrence interests, courts may award attorney's fees when plaintiffs press factually or legally baseless claims, in order to discourage others like them. *See, e.g.*, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018) (affirming fee award when the plaintiff lacked "a reasonable factual basis" to assert a claim against the defendant). "[E]ven if the losing position was reasonable in a particular case," a court may award fees "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims." *Kirtsaeng*, 579 U.S. at 209.

Compensation and deterrence interests, nevertheless, should not dissuade "plaintiffs acting in good faith and with potentially meritorious claims [] from seeking to protect their copyrights" because of the "fear of a large attorney's fees award." *Epikhin*, 2016 WL 1258690, at *8.

Here, Plaintiff argues that the award would serve as a deterrence, compelling litigants to consider federal counterclaims before seeking to remand an action to state court. Although Plaintiff cites to some cases like *Gable v. Nat'l Broad. Co.*, 438 F. App'x 587, 589 (9th Cir. 2011) (citation modified), for the proposition that a fee award "helps to prevent the filing of similarly meritless copyright actions in the future," Defendants' copyright counterclaims were neither frivolous nor objectively unreasonable. And Defendants did not demonstrate bad faith. Therefore, an award of attorney's fees is neither appropriate to compensate Plaintiff, in abandonment of the American Rule, nor to deter Defendants or others similarly situated from filing such suits; the Court considers this factor to weigh against a fee award.

- 10 -

22cv0938

### d.    Purposes of the Copyright Act and Other Ninth Circuit Considerations

"[C]omplete success" on the merits—and not on a technical defense—weighs in favor of an award of attorney's fees. *See Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020). Here, Plaintiff succeeded at the motion to dismiss stage by receiving a dismissal of Defendants' copyright counterclaims without leave to amend. As Plaintiff's highlight, the Court mentioned that Defendants "pleaded themselves out of court." (Sept. Order, 16:5–6.) This factor weighs in favor of attorney's fees; however, where "[t]he only factor to weigh in [copyright defendants'] favor is the degree of success obtained," an award of fees is not merited. *See Ets-Hokin*, 323 F.3d at 766.

Whether an award of fees furthers the purposes of the Copyright is the guiding question underlying all the factors. *See Mattel Inc. v. MGA Entm't*, 705 F.3d 1108, 1111 (9th Cir. 2013) ("The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act."); *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014), as amended (July 9, 2014) ("A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does."). Here, an award of fees in this personal business dispute does not readily promote the goal of public access to creative works. And the Court cannot say that an award of attorney's fees would chill legitimate copyright enforcement. Hence, the Court considers the purposes of the Copyright Act neither favored nor disfavored by a fee award.

Upon weighing the factors and considering the briefing, the Court exercises its discretion to decline an award of attorney's fees to Plaintiff pursuant to the Copyright Act, 17 U.S.C. § 505.

22cv0938

**B.     Attorney's Fees, Anti-SLAPP, Cal. Civ. Proc. Code § 425.16(c)(1)**

Plaintiff seeks an award of attorney's fees and costs in the amount of $9,484.00 for defending against Defendants' anti-SLAPP motion to strike. (Fee Mot. 15:4–5.) The Court denies Plaintiff's request for the following reasons.

California's anti-SLAPP statute authorizes the pre-trial dismissal of "SLAPPs," which stands for "Strategic Lawsuits Against Public Participation". *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 974 (C.D. Cal. 1999).

The opening paragraph of § 425.16(a) explains the purpose of the statute:

> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

Cal. Civ. Proc. Code § 425.16(a); *see Metabolife*, 264 F.3d at 839 (stating that the statute aims to identify "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation").

Because SLAPP suits seek to deplete "the defendant's energy" and drain "his or her resources," the legislature sought "to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Kibler v. N. Inyo Cnty. Local Hop. Dist.*, 39 Cal. 4th 192, 197 (2006) (citations omitted). "Thus, in promulgating [§] 425.16, the California legislature provided that a 'special motion to strike may be brought early in the lawsuit and that discovery ordinarily may not proceed unless and until the court finds that the [plaintiff's] suit has a probability of success.'" *Aeroplate Corp. v. Arch Ins. Co.*, No. 06-

22cv0938

cv-1099-AWI-SMS, 2006 WL 3257487, at *3 (E.D. Cal. Nov. 9, 2006) (quoting *Rogers*, 57 F. Supp. 2d at 976).

A § 425.16 motion to strike does not apply to federal claims presented in federal courts, *see Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1182 (C.D. Cal. 2006), but the anti-SLAPP statute can apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction," *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010); *see also Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("The *Erie* doctrine applies to pendent state law claims to the same extent it applies to state law claims before a federal court on the basis of diversity jurisdiction.").

Consistent with its purpose of protecting a defendant from abusive litigation, the anti-SLAPP statute contains a fee-shifting provision whose standard turns on which party prevailed. The attorney's fees provision of the statute provides:

> [A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion[.]

Cal. Civ. Proc. Code § 425.16(c)(1).

Here, the Court finds that the anti-SLAPP motion was neither frivolous nor solely intended to cause unnecessary delay, and thus does not award Plaintiff's attorney's fees.[3] As discussed, Defendants moved to strike Plaintiff's equitable defense of unclean hands asserted through the vehicle of the Declaratory Judgment Act. (anti-SLAPP Reply 2:12-5:21, ECF No. 35.) At first glance, Defendants' request to apply a state law motion to strike

---

[3] California Civil Procedure Code § 128.5(b)(2) defines "frivolous" as "totally and completely without merit or for the sole purpose of harassing an opposing party."

22cv0938

to an equitable defense to a federal copyright claim appears borderline frivolous. But a closer look at the parties' briefing and the case law suggests the motion was not frivolous.

First, Defendants' motion indicates they understood Plaintiff's counter-counterclaims, regarding the equitable defense of unclean hands, to pertain to state law for the following reasons. In essence, Plaintiff's unclean hands claim did not allege that Mr. Berg engaged in inequitable conduct before the Copyright Office in procuring the copyright registrations. Rather, Plaintiff alleged that Defendants submitted falsified copyright registration certificates in this proceeding—misconduct directed at the Court, not the Copyright Office. Plaintiff's invocation of unclean hands was thus based on forgery, which sounded in Plaintiff's state law fraud claims. In fact, Plaintiff's opposition emphasized the state law fraud claims and attached exhibits relating to them. (ECF No. 34-2, Ex. A.) In other words, Plaintiff's opposition blurs the lines between allegations of forgery during the business relationship and in the copyright certifications to suggest that fraud is Defendants' *modus operandi*.

Plaintiff's anti-SLAPP motion reflects such understanding, stating, "Westhoff's counter-counter-complaint serves one purpose only: punish Defendants for filing legal claims against it, and force them to defend yet another meritless (although serious) accusation of forgery and fraud they did not commit." (anti-SLAPP Mot. 7:15–17, ECF No. 31.) Elsewhere, the motion states: "Westhoff alleges Defendants forged the first-filed exhibits and committed fraud on the Court[.]" (*Id*. at 9:13–14.) This interpretation of Plaintiff's equitable defense ties it to state law fraud allegations.

Turning to the case law, Plaintiff's brief correctly noted that the Ninth Circuit has rejected the application of the anti-SLAPP statute to federal intellectual property statutes, stating: "Indeed, [the defendant] could not have moved to strike the Lanham Act claim because, as the parties agree, the anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). But Defendants raised the anti-SLAPP statute not as to the copyright claims but as to the equitable defense of unclean hands. And Defendants point out that not every copyright-related issue is

22cv0938

governed by federal law. *See Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982 (9th Cir. 2003) ("Because questions regarding the ownership of a copyright are governed by state law, we determine that subject matter jurisdiction is lacking[.]); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001) ("Which law, state or federal, governs the creation of an implied, nonexclusive copyright license? We conclude that while federal law answers the threshold question of whether an implied, nonexclusive copyright license can be granted (it can), state law determines the contract question: whether a copyright holder has, in fact, granted such a license.").

The Court acknowledges that Defendants offer no authority in which a federal court has treated an equitable defense to a copyright claim as a state law claim subject to California's anti-SLAPP statute. The Court's survey of the case law suggests that courts rarely specify "federal" or "state" when discussing equitable defenses. *See, e.g.*, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). Perhaps the specification of whether the equitable defense arises out of state law or federal law does not matter in many cases because the analysis is similar. *See, e.g.*, *Manser v. Sierra Foothills Pub. Util. Dist.*, No. CV-F-08-1250LJO SMS, 2010 WL 3521770, at *3 (E.D. Cal. Sept. 7, 2010) ("Federal common law of equitable estoppel and California equitable estoppel have the same basic elements."). Nevertheless, it matters here. *See, e.g.*, *Jones v. Cnty. of San Diego*, No. 20CV1989-GPC(DEB), 2022 WL 3084588, at *6 (S.D. Cal. Aug. 2, 2022), aff'd, No. 22-55921, 2023 WL 8227562 (9th Cir. Nov. 28, 2023) ("[E]quitable tolling under federal law and California state law is distinct[.]").

The Court understands an equitable defense to a federal copyright claim to be a federal equitable defense. *See Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 762 (9th Cir. 1981) ("Because an action brought under § 301(a) of the Labor Management Relations Act is an action arising under a federal statute, the federal common law, rather than state law, is controlling with respect to the availability of the estoppel defense."); *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1098 (N.D. Cal. 2003) ("Both parties suggest in their briefs that the elements of equitable estoppel are governed by California law. In fact,

- 15 -

22cv0938

Defendant's equitable estoppel defense is governed by federal common law because the action arises under a federal statute."); U.S. Const. art. VI, cl. 2 (Supremacy Clause). However, because of the parties' briefing and the case law on this question, the Court cannot say Defendants' motion was frivolous.

And Plaintiff does not provide evidence from which the Court can determine that Defendants filed a motion to strike solely with the intent to cause unnecessary delay. The Court relies in part on Defendants' briefing, which suggests that they attempted to address and remedy the issue with Plaintiff through email and telephone communications before filing the motion to strike. (anti-SLAPP Heffner Decl. ¶¶ 10–12, 15–17.)

In any case, the Court resolved the issue on the basis of the Declaratory Judgement Act. (Sept. Order 31:1–3.) The Court cited to three district court opinions, which were not identified by the parties (*Id*. at 30:23–31:16) further weakening any argument that the anti-SLAPP motion was frivolous.

Thus, given that the Court finds that Defendants' motion to strike was neither frivolous nor solely intended to cause unnecessary delay, the Court denies Plaintiff's demand for costs and attorney's fees under the California statute § 425.16(c)(1).

**C.      Joint and Several Liability for GRSM, 28 U.S.C. § 1927**

Plaintiff seeks to hold counsel of GRSM jointly and severally liable for any award of attorney's fees pursuant to 28 U.S.C. § 1927. (Fee Mot. 16:4–5.) The Court denies Plaintiff's request for the following reasons.

As discussed, under the American Rule, each party bears its own attorney's fees regardless of the outcome of the litigation. *See Fogerty*, 510 U.S. at 534. Yet Congress and state legislatures have carved out exceptions to this default through fee-shifting statutes—such as the Copyright Act and California's anti-SLAPP statute—that allow a prevailing party to recover attorney's fees from the opposing party subject to the court's determinations. Any award of attorney's fees, however, is paid for by the party. *See, e.g., Grayson, Givner, Booke, Silver & Wolfe v. Old Republic Ins. Co.*, 152 F.3d 925 (9th Cir.

22cv0938

1998) ("Under California law, attorney's fees are ordinarily to be paid by the party employing the attorney.").

Section 1927 operates differently. Rather than shifting fees between parties based on who prevailed, the statute imposes personal liability on an *attorney* whose conduct unreasonably and vexatiously multiplies the proceedings—independent of whether the client's underlying position had merit. Congress enacted § 1927 in part to deter abusive litigation tactics that drive up costs without serving a legitimate purpose.

The statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Here, Plaintiff's invocation of § 1927 fails on a technicality and on the merits. Regarding the technicality, Plaintiff did not properly raise the statute against an attorney's conduct, but instead referenced "Defendants' counsel GRSM." (Fee Mot. 16:4–5, 12–14.)[4] One cannot sue a law firm pursuant to § 1927. *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015). Plaintiff nevertheless argues that it used such language to keep things less "personal"; Plaintiff identifies three GRSM partners Heffner, Cawdrey, and Sybert in its reply brief. (Fee Reply 1:18–20, ECF No. 102.) The Court would need to generously read the briefing to find that Plaintiff invokes the statute against an attorney.

---

[4] Elsewhere in the paragraph for § 1927 liability, Plaintiff refers to "Gordon Rees" and the firm as an "it." (*See* Fee Mot. 16:13:15, ECF No. 77) ("To the extent Gordon Rees wants to shift blame, in whole or in part to Defendants, it should be required to provide enough evidence to overcome the presumption[.]").

- 17 -

But even if Plaintiff did properly assert the statute against attorney conduct, Plaintiff fails to show that the identified partners acted with subjective bad faith regarding any filings. *See In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 436 (9th Cir. 1996) (stating that § 1927 sanctions "must be supported by a finding of subjective bad faith" (citation omitted)). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id*. (citation omitted).

Here, Plaintiff has not shown that the attorneys knowingly or recklessly raised frivolous arguments or intended to harass. Plaintiff identifies several bases from which to draw an inference of subjective bad faith:

- first removing this case to state court, sitting on its copyright counterclaims for two years, only to remove this case back to this Court;

- filing two copyright counterclaims contradicting Berg's previous claim that he was a Westhoff employee and never owned the asserted copyrights;

- maintaining a complaint against Westhoff for well over a year that admitted Westhoff had a license and right to use the asserted copyrights; and

- filing a frivolous anti-SLAPP motion.

(Fee Mot. 16:16–23.)

For the reasons discussed above, Plaintiff has not established improper motivation in the removal proceeding. And Plaintiff does not cite specific documents or declarations establishing that these three attorneys knowingly or recklessly filed frivolous copyright claims. Further, the Court does not find the anti-SLAPP motion to be frivolous. Plaintiff cites no additional case law in its moving paper in support of its analysis. The Court cannot draw an inference of subjective bad faith based on these allegations.

22cv0938

In the alternative, Plaintiff could rely on the Court's inherent power to levy sanctions against attorneys. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (discussing the Court's inherent authority to grant sanctions against attorneys "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose"). Plaintiff for the first time in reply mentions the Court's inherent power to levy sanctions. (Fee Reply 2:7–11.) Yet, Plaintiff did not ask the Court to use its inherent power. To the extent Plaintiff suggests the Court should invoke its inherent authority here, the Court finds the request not appropriate. In part because Defendants did not have an opportunity to respond to this basis of sanctions, the Court declines to exercise its inherent powers.

Hence, the Court denies Plaintiff's request to hold the three GRSM partners jointly and severally liable for any fees or costs.

### D.    Costs

Plaintiff seeks to recover $12,537.47 in costs for defending against Defendants' copyright counterclaims. (Fee Mot. 15:14–15.)

The Copyright Act gives district courts discretion to award "full costs" to a party in copyright litigation. *See* 17 U.S.C. § 505. Congress has specified six categories of litigation expenses that qualify as "costs." *See* 28 U.S.C. §§ 1821, 1920. "In copyright cases, § 505's authorization for the award of 'full costs' [] covers only the six categories specified in the general costs statute, codified at §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 336–37 (2019).

Given that Plaintiff's request for costs does not conform to the Supreme Court's limitation in *Remini*, the Court denies with leave to amend the request.

22cv0938

## IV. CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion for attorney's fees under the copyright and anti-SLAPP statutes, and the Court does not hold GRSM jointly and severally liable, but the Court **DENIES with leave to amend** as to any costs under 17 U.S.C. § 505. (ECF No. 77.)

**IT IS SO ORDERED.**

DATED: May 29, 2026

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

22cv0938